FILED
U.S. DISTRICT COURT

2008 MAY -2 P 3: 19

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

Nancy A. Mismash, 6615
ROBERT J. DEBRY & ASSOCIATES
4252 South 700 East
Salt Lake City, Utah 84107
Telephone:      801/262-8915
Facsimile: 801/262-8995
nmismash@robertdebry.com
*Attorneys for Plaintiffs*

---

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| **JOSEPH HEBERT AND ELEANOR HEBERT** | : | Case: 2:08cv00340 |
| | : | Assigned To : Benson, Dee |
| | : | Assign. Date : 5/2/2008 |
| | : | Description: Hebert et al v. Merck and Co |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Jury Trial Demanded** |
| | : | |
| **MERCK & CO., INC.,** | : | **MDL: 1789** |
| | : | |
| **Defendant.** | : | |

### COMPLAINT

Plaintiff, JOSEPH (hereinafter "JOE") HEBERT and ELEANOR HEBERT, husband and wife, by and through their undersigned attorney sues Defendant Merck & Company, Inc., and allege as follows:

### I. PARTIES

1.      At all relevant times, Plaintiff was a resident of West Valley City, State of Utah. Plaintiff used the defendant's drug FOSAMAX. Plaintiff was married to ELEANOR HEBERT at all times material to this action.

2.      Defendant is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in New Jersey. The Defendant's principal office is located at One Merck Drive, Whitehouse Station, New Jersey.

3.      Defendant was at all relevant times authorized to conduct business in the State of Utah and defendant has regularly transacted business in the State of Utah and continues to do so.

4.      At all relevant times Defendant, through its agents, servants, employees and apparent agents was the designer, manufacturer, marketer, distributor and seller of FOSAMAX, a bisphosphonate drug used primarily to mitigate or reverse the effects of osteoporosis, osteopenia, and Paget's Disease.

5.      Defendant, either directly or through its agents, apparent agents, servants or employees, at all relevant times, sold and distributed FOSAMAX in the State of Utah and other states.

6.      Defendant derives substantial revenue from pharmaceutical products used or consumed in the State of Utah and throughout the United States.

7.      Defendant expected, or should have expected, that its business activities could or would have consequences within the State of Utah or any other state where its product is used.

8.      Defendant placed FOSAMAX into the stream of worldwide commerce and interstate commerce in the United States. It did so without adequate testing and with no warning that the drug carried with it a risk of causing osteonecrosis of the jaw.

9.      Defendant, either, directly or through its agents, apparent agents, servants or employees designed, manufactured, marketed, advertised, distributed and sold FOSAMAX for

the treatment of osteoporosis, Paget's Disease, and other uses.

      10.    As a result of the defective nature of FOSAMAX, Plaintiff JOE HEBERT suffered and continues to suffer severe and permanent personal injuries, including osteonecrosis of the jaw.

      11.    Defendant concealed and continues to conceal its knowledge of FOSAMAX's unreasonably dangerous risks from Plaintiff JOE HEBERTSON other consumers, and the medical community.

      12.    Defendant failed to conduct adequate and sufficient post-marketing surveillance of FOSAMAX after it began marketing, advertising, distributing, and selling the drug.

      13.    As a result of Defendant's actions and inaction, Plaintiff JOE HEBERT was injured due to his ingestion of FOSAMAX, which has caused and will continue to cause Plaintiff various injuries and damages. Plaintiff accordingly seeks compensatory damages.

## II. JURISDICTION AND VENUE

      14.    This Court has jurisdiction pursuant to 28 U.S.C. §§1332, as complete diversity exists between Plaintiff and Defendant.

      15.    Plaintiff is a resident of the State of Utah.

      16.    Defendant, Merck & Co., Inc., is incorporated and has its primary place of business in the State of New Jersey. The amount in controversy, exclusive of interest and costs, exceeds $75,000.

      17.    Venue is proper within this district and division pursuant to agreement of the parties.

### III. **FACTUAL BACKGROUND**

18.    At all relevant times Defendant was responsible for, or involved in, designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX.

19.    In September 1995, the United States Food and Drug Administration ("FDA") approved Merck's compound alendronate for various uses, including the treatment of osteoporosis and Paget's disease. Alendronate is marketed by Defendant Merck as FOSAMAX.

20.    FOSAMAX falls within a class of drugs known as bisphosphonates. Bisphosphonates are used for treating bone conditions such as osteoporosis and Paget's disease. Other drugs within this class, such as Aredia and Zometa, are used as chemotherapy and as adjunct chemotherapy but are not indicated for use in non-cancerous conditions such as osteoporosis.

21.    There are two classes of bisphosphonates: the N-containing (nitrogenous) and non-N-containing (non-nitrogenous) bisphosphonates. The nitrogenous bisphosphonates include the following: pamidronate (Aredia); ibandronate (Bondronat); and alendronate (FOSAMAX). The non-nitrogenous bisphosphonates include the following: etridonate (Didronel); clodronate (Bonefos and Loron); and tiludronate (Skelid). Alendronate contains a nitrogen atom. The Physicians Desk Reference ("PDR") for FOSAMAX confirms that the molecule contains a nitrogen atom.

22.    Throughout the 1990s and 2000s, medical articles and studies appeared reporting the frequent and common occurrence of osteonecrosis of the jaw within the nitrogenous bisphosphonates used for chemotherapy. As with its reported and acknowledged side effects

concerning irritation, erosion, and inflammation of the upper gastrointestinal tract, Merck knew

or should have known that FOSAMAX, as a nitrogenous bisphosphonate, shared a similar

adverse event profile to the other drugs within this specific subclass of bisphosphonates (i.e.,

those containing nitrogen).

23.     Merck knew or should have known that bisphosphonates, including FOSAMAX,

inhibit endothelial cell function.  Similarly, Merck knew or should have known that

bisphosphonates also inhibit vascularization of the affected area and induce ischemic changes

specific to patients' mandibles (lower jaws) and maxillae (upper jaws) and that these ischemic

changes appear to be cumulative in nature.

24.     Merck also knew or should have known that these factors combine to create a

compromised vascular supply in the affected area.  As a result, a minor injury or disease can turn

into a non-healing wound.  This condition can progress to widespread necrosis (bone death) and

osteomyelitis (inflammation of bone marrow).

25.     Dentists are now being advised by dental associations to refrain from using any

invasive procedure (such as drilling a cavity) for any patient on FOSAMAX.

26.     Once the osteonecrosis begins and becomes symptomatic, it is very difficult to

treat and typically is not reversible.

27.     Shortly after Defendant began selling FOSAMAX, reports of osteonecrosis of the

jaw and other dental complications among users began surfacing, indicating that FOSAMAX

shared the class effects of the other nitrogenous bisphosphonates.  Despite this knowledge,

Defendant failed to implement further study risk of osteonecrosis of the jaw relative to

FOSAMAX. Rather than evaluating and verifying the safety of FOSAMAX with respect to osteonecrosis of the jaw, Defendant proposed further uses of FOSAMAX, such as FOSAMAX-D, and sought to extend the exclusivity period of FOSAMAX through 2018.

28.     Osteonecrosis of the jaw is a serious medical event and can result in severe disability and death.

29.     Since FOSAMAX was released, the FDA has received a significant number of reports of osteonecrosis of the jaw among users of FOSAMAX and continues to do so.

30.     On August 25, 2004, the United States Food & Drug Administration ("FDA") posted its ODS Postmarketing Safety Review on bisphosphonates - - specifically pamidronate (Aredia), zoledronic acid (Zometa), risedronate (Actonel), and alendronate (FOSAMAX). This was an epidemiologic review of the FDA adverse events database conducted by the FDA's Division of Drug Risk Evaluation.

31.     As a result of the FDA Review, the FDA observed that the risk of osteonecrosis of the jaw was not confined to bisphosphonates used for chemotherapy. The FDA's review indicated that the osteonecrosis of the jaw was a class effect which specifically extended to the oral bisphosphonate, FOSAMAX.

32.     As a result, the FDA recommended and stated that the labeling for FOSAMAX should be amended by Defendant to specifically warn about the risk of osteonecrosis of the jaw. Defendant has refused to accede to the FDA's request and, to this day, still does not warn of the risk of osteonecrosis of the jaw in its FOSAMAX labeling.

33.     Rather than warn patients, and despite knowledge known by Defendant about

increased risk of osteonecrosis of the jaw on patients using FOSAMAX, Defendant continues to defend FOSAMAX, mislead physicians and the public, and minimize unfavorable findings.

34.     FOSAMAX is one of Defendant's top selling drugs, averaging more than $3 billion a year in sales.

35.     Consumers, including Plaintiff JOE HEBERT, who have used FOSAMAX for treatment of osteoporosis, have several alternative safer products available to treat the condition.

36.     Defendant knew of the significant risk of dental and oral complications caused by ingestion of FOSAMAX, but Defendant did not adequately and sufficiently warn consumers, including Plaintiff JOE HEBERT, or the medical community, of such risks.

37.     As a direct result, Plaintiff JOE HEBERT was prescribed FOSAMAX and has been permanently and severely injured, having suffered serious consequences from the ingestion of FOSAMAX.  Plaintiff JOE HEBERT requires and will in the future require ongoing medical care and treatment.

38.     Plaintiff JOE HEBERT has suffered from mental anguish from the knowledge that Plaintiff will have life-long complications as a result of the injuries Plaintiff sustained from the use of FOSAMAX.

39.     Plaintiff JOE HEBERT was prescribed and began taking FOSAMAX in or about May 31, 2001.

40.     Plaintiff used FOSAMAX as prescribed and in a foreseeable manner.

41.     As a direct and proximate result of using FOSAMAX, Plaintiff suffered severe osteonecrosis of the jaw.

42.     Plaintiff, as a direct and proximate result of using FOSAMAX, suffered severe mental and physical pain and suffering and has sustained permanent injuries and emotional distress.

43.     Plaintiff used FOSAMAX which had been provided to him in a condition that was substantially the same as the condition in which it was manufactured and sold.

44.     Plaintiff would not have used FOSAMAX had Defendant properly disclosed the risks associated with the drug.  Alternatively, Plaintiff would have known the precursor events of osteonecrosis of the jaw and would have been able to avoid the clinical manifestation of the symptoms as they currently exist.

45.     Defendant, through its affirmative misrepresentations and omissions, actively concealed from Plaintiff and his physicians the true and significant risks associated with taking FOSAMAX.  The running of any applicable statute of limitations has been tolled by reason of Defendant's fraudulent concealment.

46.     As a result of Defendant's actions, Plaintiff and his prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this complaint, and that those risks were the direct and proximate result of Defendant's acts, omissions, and misrepresentations.

## IV.  COUNTS

### COUNT I:  NEGLIGENCE

47.     Plaintiffs restate the allegations set forth above as if fully set forth herein.

48.     Defendant owed Plaintiff JOE HEBERT a duty to exercise reasonable care when

designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX.

49.    Defendant failed to exercise due care under the circumstances and therefore breached this duty by:

a.    failing to properly and thoroughly test FOSAMAX before releasing the drug to market;

b.    failing to properly and thoroughly analyze the data resulting from the pre-marketing tests of FOSAMAX;

c.    failing to conduct sufficient post-marketing testing and surveillance of FOSAMAX;

d.    designing, manufacturing, marketing, advertising, distributing, and selling FOSAMAX to consumers, including Plaintiff, without an adequate warning of the significant and dangerous risks of FOSAMAX and without proper instructions to avoid the harm which could foreseeably occur as a result of using the drug;

e.    failing to exercise due care when advertising and promoting FOSAMAX; and

f.    negligently continuing to manufacture, market, advertise, and distribute FOSAMAX after Defendant knew or should have known of its adverse effects.

50.    As a direct and proximate consequence of Defendant's actions, omissions, and misrepresentations, Plaintiff JOE HEBERT sustained osteonecrosis of the jaw.  In addition, Plaintiff required and will continue to require healthcare and services.  Plaintiff has incurred and will continue to incur medical and related expenses.  Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased

risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

51.    Defendant's conduct as described above was committed with knowing, conscious, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

52.    Plaintiff's spouse, ELEANOR HEBERT, sustained a loss of consortium as a result of the injuries and damages sustained by her husband's incident to the use of FOSAMAX. Her damages include, but are not limited to, a loss of society, companionship, services, support, and care. Her loses are permanent and continuing in nature.

## COUNT II:  STRICT LIABILITY

53.    Plaintiffs restate the allegations set forth above as if fully set forth herein.

54.    Defendant manufactured, sold, distributed, marketed, and/or supplied FOSAMAX in a defective and unreasonably dangerous condition to consumers, including Plaintiff JOE HEBERT.

55.    Defendant designed, manufactured, sold, distributed, supplied, marketed, and/or promoted FOSAMAX, which was expected to reach and did in fact reach consumers, including

Plaintiff, without substantial change in the condition in which it was manufactured and sold by Defendant.

56.     Plaintiff used FOSAMAX as prescribed and in a manner normally intended, recommended, promoted, and marketed by Defendant.

57.     FOSAMAX failed to perform safely when used by ordinary consumers, including Plaintiff, including when it was used as intended and in a reasonably foreseeable manner.

58.     FOSAMAX was defective in its design and was unreasonably dangerous in that its risks exceeded the benefits associated with its design or formulation.

59.     FOSAMAX was defective in design or formulation in that it posed a greater likelihood of injury than other similar medications and was more dangerous than an ordinary consumer could reasonably foresee or anticipate.

60.     FOSAMAX was defective in its design and was unreasonably dangerous in that it neither bore nor was packaged with nor accompanied by warnings adequate to alert consumers, including Plaintiff, of the risks described herein, including, but not limited to, the risk of osteonecrosis of the jaw.

61.     Although Defendant knew or should have known of the defective nature of FOSAMAX, it continued to design, manufacture, market, and sell FOSAMAX so as to maximize sales and profits at the expense of the public health and safety. By so acting, Defendant acted with conscious and deliberate disregard of the foreseeable harm caused by FOSAMAX.

62.     Plaintiff could not, through the exercise of reasonable care, have discovered FOSAMAX's defects or perceived the dangers posed by the drug.

63.     As a direct and proximate consequence of Defendant's conduct, Plaintiff JOE

HEBERT sustained osteonecrosis of the jaw.  In addition, Plaintiff required and will continue to

require healthcare.  Plaintiff has incurred and will continue to incur medical and related

expenses.  Plaintiff also has suffered and will continue to suffer diminished capacity for the

enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of

preexisting conditions and activation of latent conditions, and other losses and damages.

Plaintiff's direct medical losses and costs include care for hospitalization, physician care,

monitoring, treatment, medications, and supplies.  Plaintiff has incurred and will continue to

incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

64.     Defendant's conduct as described above was committed with knowing, conscious,

wanton, willful, and deliberate disregard for the value of human life and the rights and safety of

consumers such as Plaintiff hereby entitling Plaintiff to punitive damages so as to punish

Defendant and deter it from similar conduct in the future.

65.     Plaintiff's spouse, ELEANOR HEBERT, sustained a loss of consortium as a

result of the injuries and damages sustained by her husband incident to the use of FOSAMAX.

Her damages include, but are not limited to, a loss of society, companionship, services, support,

and care.  Her loses are permanent and continuing in nature.

## COUNT III:  BREACH OF EXPRESS WARANTY

66.     Plaintiffs restate the allegations set forth above as if fully set forth herein.

67.     Defendant expressly represented to Plaintiff JOE HEBERT and the medical

community that FOSAMAX was safe and fit for its intended purposes, that it was of

merchantable quality, that it did not produce any dangerous side effects, and that it was adequately tested.

68.    FOSAMAX does not conform to Defendant's express representations because it is not safe, has numerous and serious side effects, and causes severe and permanent injuries.

69.    At all relevant times FOSAMAX did not perform as safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

70.    Plaintiff JOE HEBERT, other consumers, and the medical community relied upon Defendant's express warranties.

71.    As a direct and proximate result of Defendant's actions, Plaintiff JOE HEBERT sustained osteonecrosis of the jaw.  In addition, Plaintiff required and will continue to require healthcare and services.  Plaintiff has incurred and will continue to incur medical and related expenses.  Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies.  Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

72.    Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff hereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

73.    Plaintiff's spouse, ELEANOR HEBERT sustained a loss of consortium as a result of the injuries and damages sustained by her husband incident to the use of FOSAMAX. Her damages include, but are not limited to, a loss of society, companionship, services, support, and care. Her loses are permanent and continuing in nature.

## COUNT IV:  BREACH OF IMPLIED WARRANTY

74.    Plaintiffs restate the allegations set forth above as if fully set forth herein.

75.    Defendant manufactured, distributed, advertised, promoted, and sold FOSAMAX.

76.    At all relevant times, Defendant knew of the use for which FOSAMAX was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

77.    Defendant was aware that consumers, including Plaintiff JOE HEBERT, would use FOSAMAX for treatment of osteoporosis and for other purposes.

78.    Plaintiff and the medical community reasonably relied upon the judgment and sensibility of Merck to sell FOSAMAX only if it was indeed of merchantable quality and safe and fit for its intended use.

79.    Defendant breached its implied warranty to consumers, including Plaintiff JOE HEBERT; FOSAMAX was not of merchantable quality or safe and fit for its intended use.

80.    Consumers, including Plaintiff and the medical community, reasonably relied upon Defendant's implied warranty for FOSAMAX.

81.    FOSAMAX reached Plaintiff and other consumers without substantial change in the condition in which it was manufactured and sold by Defendant.

82.    As a direct and proximate result of Defendant's action, Plaintiff JOE HEBERT

sustained osteonecrosis of the jaw.  In addition, Plaintiff required and will continue to require

healthcare and services.  Plaintiff has incurred and will continue to incur medical and related

expenses.  Plaintiff also has suffered and will continue to suffer diminished capacity for the

enjoyment of life, a diminished quality of life, increased risk of premature death, aggravation of

preexisting conditions and activation of latent conditions, and other losses and damages.

Plaintiff's direct medical losses and costs include care for hospitalization, physician care,

monitoring, treatment, medications, and supplies.  Plaintiff has incurred and will continue to

incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

83.    Defendant's conduct as described above was committed with knowing, conscious,

wanton, willful, and deliberate disregard for the value of human life and the rights and safety of

consumers such as Plaintiff hereby entitling Plaintiff to punitive damages so as to punish

Defendant and deter it from similar conduct in the future.

84.    Plaintiff's spouse, ELEANOR HEBERT sustained a loss of consortium as a result

of the injuries and damages sustained by her husband incident to the use of FOSAMAX.  Her

damages include, but are not limited to, a loss of society, companionship, services, support, and

care.  Her loses are permanent and continuing in nature.

### COUNT V:  FRAUDULENT MISREPRESENTATION

85.    Plaintiffs restate the allegations set forth above as if fully set forth herein.

86.    Defendant made fraudulent misrepresentations with respect to FOSAMAX in the

following particulars:

a.    Defendant represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that FOSAMAX had been tested and found to be safe and effective for the treatment of osteoporosis and other conditions; and

b.    Defendant represented that FOSAMAX was safer than other alternative medications.

87.    Defendant knew that its representations were false, yet it willfully, wantonly, and recklessly disregarded its obligation to provide truthful representations regarding the safety and risk of FOSAMAX to consumers, including Plaintiff, and the medical community.

88.    The representations were made by Defendant with the intent that doctors and patients, including Plaintiff, rely upon them.

89.    Defendant's representations were made with the intent of defrauding and deceiving Plaintiff, other consumers, and the medical community to induce and encourage the sale of FOSAMAX.

90.    Plaintiff's doctors, and others relied upon the representations.

91.    Defendant's fraudulent representations evinced its callous, reckless, willful, and depraved indifference to the health, safety, and welfare of consumers, including Plaintiff.

92.    As a direct and proximate result, Plaintiff JOE HEBERT sustained osteonecrosis of the jaw.  In addition, Plaintiff required and will continue to require healthcare and services. Plaintiff has incurred and will continue to incur medical and related expenses.  Plaintiff also has suffered and will continue to suffer diminished capacity for the enjoyment of life, a diminished

quality of life, increased risk of premature death, aggravation of preexisting conditions and activation of latent conditions, and other losses and damages. Plaintiff's direct medical losses and costs include care for hospitalization, physician care, monitoring, treatment, medications, and supplies. Plaintiff has incurred and will continue to incur mental and physical pain and suffering and loss of wages and wage-earning capacity.

93.    Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

94.    Plaintiff's spouse, ELEANOR HEBERTSON, sustained a loss of consortium as a result of the injuries and damages sustained by her husband incident to the use of FOSAMAX. Her damages include, but are not limited to, a loss of society, companionship, services, support, and care. Her loses are permanent and continuing in nature.

**COUNT VI:  FRAUDULENT CONCEALMENT**

95.    Plaintiffs restate the allegations set forth above as if fully set forth herein.

96.    Defendant fraudulently concealed information with respect to FOSAMAX including but not limited to the following particulars:

a.    Defendant represented through its labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that FOSAMAX was safe and effective and fraudulently withheld and concealed information about the substantial risks of using FOSAMAX; and

b.      Defendant represented that FOSAMAX was safer than other alternative medications and fraudulently concealed information which demonstrated that FOSAMAX was not safer than alternatives available on the market.

97.      Defendant had sole access to material facts concerning the dangers and unreasonable risks of FOSAMAX.

98.      The concealment of information by Defendant about the risks of FOSAMAX was intentional, and the representations made by Defendant were known by Defendant to be false.

99.      The concealment of information and the misrepresentations about FOSAMAX were made by Defendant with the intent that doctors and patients, including Plaintiff, rely upon them.

100.      Plaintiff's doctors, and others relied upon the representations and were unaware of the substantial dental and oral risks of FOSAMAX which Defendant concealed from Plaintiff's doctors and Plaintiff.

101.      As a direct and proximate result of Defendant's fraudulent concealment and misrepresentation, Plaintiff JOE HEBERT suffered osteonecrosis of the jaw and was caused to suffer severe and permanent injuries, including pain and mental and physical anguish and suffering, including a diminished capacity for the enjoyment of life, aggravation of preexisting conditions and activation of latent conditions, and a fear of developing other harmful conditions or problems as a result of the injury. Plaintiff has suffered and will continue to suffer a loss of wages and wage-earning capacity and has incurred expense for medical care and treatment due to the injuries caused by FOSAMAX.

102.    Defendant's conduct as described above was committed with knowing, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages so as to punish Defendant and deter it from similar conduct in the future.

103.    Plaintiff's spouse, ELEANOR HEBERTSON, sustained a loss of consortium as a result of the injuries and damages sustained by her husband incident to the use of FOSAMAX. Her damages include, but are not limited to, a loss of society, companionship, services, support, and care. Her loses are permanent and continuing in nature.

## COUNT VII:  PUNITIVE DAMAGES

104.    Plaintiffs restate the allegations set forth above as if fully set forth herein.

105.    Defendant has repeatedly engaged in a pattern of conduct of deliberately avoiding FDA recommendations as which warnings relating to public hazards should be warned about.

106.    For instance, in March 2000, Defendant completed a study called VIGOR (VIOXX Gastrointestinal Outcomes Research) relating to its prescription cox-2 inhibitor, VIOXX.  The VIGOR study showed that VIOXX patients had more than double the rate of serious cardiovascular problems than those on Naproxen, an older nonsteroidal anti-inflammatory drug.  The study was published in the New England Journal of Medicine.

107.    In September 2001, the FDA warned Defendant to stop misleading doctors about VIOXX's effect on the cardiovascular system.  Defendant Merck was admonished to stop minimizing the risks of the drug in its marketing.  Despite that, Defendant refused to adequately warn physicians and patients about the risk of heart attacks and VIOXX.

108.    On August 25, 2004, a representative from the FDA presented results of a database analysis of 1.4 million patients.  The analysis demonstrated that VIOXX users were more likely to suffer a heart attack or sudden cardiac death than those taking Celebrex or older non-steroidal drugs.  The FDA representative concluded that VIOXX was linked to more than 27,000 heart attacks or sudden cardiac deaths nationwide from the time it came on the market in 1999 through 2003.

109.    On August 26, 2004, Defendant released a press statement which refuted the FDA analysis and restated Defendant's support for the cardiovascular safety of VIOXX.

110.    On September 30, 2004, Defendant recalled VIOXX from the market, after having to halt the APPROVe study (Adenomatous Polyp Prevention on Vioxx).  The study was underway to evaluate the use of VIOXX for recurrent colon polyps.  The researchers found an alarming number of cardiovascular events among the drug's users in the APPROVe study.

111.    At that same time, Defendant was aware that the FDA, as of August 24, 2004, was advising Defendant to warn about the risk of osteonecrosis of the jaw for its FOSAMAX patients.  Because Defendant knew that its blockbuster drug VIOXX was about to be pulled from the market, placing more importance on the $3 billion+ annual sales of FOSAMAX, Defendant deliberately chose to not amend its packaging of FOSAMAX to include the risk of osteonecrosis of the jaw, fearing that such a warning would result in reduced revenues for its second largest income producer, FOSAMAX.

112.    Defendant's acts were willful and malicious in that Defendant's conduct was carried on with a conscious disregard for the safety and rights of Plaintiff.  Defendant's

unconscionable conduct thereby warrants an assessment of exemplary and punitive damages against Defendant in an amount appropriate to punish Defendant, and deter similar conduct in the future.

### COUNT VIII:  PRAYER FOR RELIEF

113.    WHEREFORE, the above premises considered, Plaintiffs pray for judgment against Defendant, jointly and/or severally, as follows:

1.    For general damages in an amount to be proven at the time of trial;

2.    For special damages in an amount to be proven at the time of trial;

3.    For exemplary and punitive damages in an amount to be proven at the time of trial, and sufficient to punish Defendant or to deter Defendant and others from repeating the injurious conduct alleged herein;

4.    For pre-judgment and post-judgment interest on the above general and special damages;

5.    For costs of this suit and attorneys' fees; and

6.    All other relief that Plaintiffs may be entitled to at equity or at law, including but not limited to compelling Defendant to adequately warn about the risk of osteonecrosis of the jaw and FOSAMAX.

## IX.  DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all counts and issues so triable.

DATED this _2nd_ day of May, 2008.

NANCY A. MISMASH
ROBERT J. DEBRY & ASSOCIATES
4252 SOUTH 700 EAST
SALT LAKE CITY,  UTAH  84107
Telephone:     801/262-8915
Facsimile:      801/262-8995
nmismash@robertdebry.com
*Attorneys for Plaintiffs*


Of Counsel:

Michael S. Burg
Seth A. Katz
BURG SIMPSON ELDREDGE
HERSH & JARDINE, P.C.
40 Inverness Dr. East
Englewood, CO  80112
Phone: 303-792-5595
Fax:    303-708-0527

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Joseph Hebert and Eleanor Hebert

**(b)** County of Residence of First Listed Plaintiff    Salt Lake
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Nancy Mismash- Robert Debry & Assoc; 4252 South 700 East
SLC, UT 84107; 801-262-8915

**DEFENDANTS**

Merck & Co., INC.,

FILED
U.S. DISTRICT COURT

2008 MAY -2  P 3:18

DISTRICT OF UTAH
BY: _____ DEPUTY CLERK

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☒ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS— Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | | | ☐ 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☒ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**   (See instructions):
JUDGE    John F. Keenan          DOCKET NUMBER  1789

DATE   5/2/08

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____

Case: 2:08cv00340
Assigned To : Benson, Dee
Assign. Date : 5/2/2008
Description: Hebert et al v. Merck and
Co

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

LODGED    FILED
DISTRICT COURT

2008 Jeffery N. Lüthi    11: 42
Clerk of the Panel

**CHAIRMAN:**
Judge John G. Heyburn II
United States District Court
Western District of Kentucky

**MEMBERS:**
Judge D. Lowell Jensen
United States District Court
Northern District of California

Judge J. Frederick Motz
United States District Court
District of Maryland

Judge Robert L. Miller, Jr.
United States District Court
Northern District of Indiana

Judge Kathryn H. Vratil
United States District Court
District of Kansas

Judge David R. Hansen
United States Court of Appeals
Eighth Circuit

Judge Anthony J. Scirica
United States Court of Appeals
Third Circuit

**DIRECT REPLY TO:**
Jeffery N. Lüthi
Clerk of the Panel
One Columbus Circle, NE
Thurgood Marshall Federal
Judiciary Building
Room G-255, North Lobby
Washington, D.C. 20002

Telephone: [202] 502-2800
Fax:           [202] 502-2888
http://www.jpml.uscourts.gov

June 2, 2008

J. Michael McMahon, Clerk
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:  MDL No. 1789 -- IN RE: Fosamax Products Liability Litigation

(See Attached CTO-56)

Dear Mr. McMahon:

I am enclosing a certified copy and one additional copy of a conditional transfer order filed by the Panel in the above-captioned matter on May 15, 2008. As stipulated in Rule 7.4(a) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), transmittal of the order has been stayed 15 days to give any party an opportunity to oppose the transfer. The 15-day period has now elapsed, no opposition was received, and the order is directed to you for filing.

The Panel's governing statute, 28 U.S.C. §1407, requires that the transferee clerk "...transmit a certified copy of the Panel's order to transfer to the clerk of the district court from which the action is being transferred."

A list of involved counsel is attached.

Very truly,

Jeffery N. Lüthi
Clerk of the Panel

By Dana L. Stewart
Deputy Clerk

Attachment

cc:  Transferee Judge:      Judge John F. Keenan
      Transferor Judges:     (See Attached List of Judges)
      Transferor Clerks:     Nancy Mayer-Whittington; D. Mark Jones

JPML Form 36

Inasmuch as no objection is
pending at this time, the
stay is lifted.

JUN – 2 2008

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 1 5 2008

FILED
CLERK'S OFFICE

# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

**IN RE: FOSAMAX PRODUCTS LIABILITY LITIGATION**          MDL No. 1789

(SEE ATTACHED SCHEDULE)

## CONDITIONAL TRANSFER ORDER (CTO-56)

On August 16, 2006, the Panel transferred four civil actions to the United States District Court for the Southern District of New York for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* 444 F.Supp.2d 1347 (J.P.M.L. 2006). Since that time, 126 additional actions have been transferred to the Southern District of New York. With the consent of that court, all such actions have been assigned to the Honorable John F. Keenan.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Southern District of New York and assigned to Judge Keenan.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Southern District of New York for the reasons stated in the order of August 16, 2006, and, with the consent of that court, assigned to the Honorable John F. Keenan.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Southern District of New York. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

**IN RE: FOSAMAX PRODUCTS LIABILITY LITIGATION**                MDL No. 1789

### SCHEDULE CTO-56 - TAG-ALONG ACTIONS

| <u>DIST.</u> <u>DIV.</u> <u>C.A. #</u> | <u>CASE CAPTION</u> |
|---|---|
| ARIZONA | |
| AZ  2  08-832 | ~~Gloria Kopecky, et al. v. Merck & Co., Inc., et al.~~ |
| | Opposed 5/27/08 |
| | |
| DISTRICT OF COLUMBIA | |
| DC  1  08-723 | Victoria Roddy, et al. v. Merck & Co., Inc. |
| | |
| UTAH | |
| UT  2  08-340 | Joseph Hebert, et al. v. Merck & Co., Inc. |
| UT  2  08-341 | Vickie Jones v. Merck & Co., Inc. |
| UT  2  08-342 | Darlene Nelson, et al. v. Merck & Co., Inc. |

**IN RE: FOSAMAX PRODUCTS LIABILITY LITIGATION**                    MDL No. 1789

## INVOLVED COUNSEL LIST (CTO-56)

Lowell W. Finson
PHILLIPS & ASSOCIATES
3030 North Third Street
Suite 1100
Phoenix, AZ 85012

M. King Hill, III
VENABLE LLP
210 Allegheny Avenue
Towson, MD 21204

Katharine R. Latimer
SPRIGGS & HOLLINGSWORTH
1350 I Street, N.W.
9th Floor
Washington, DC 20005

Aaron M. Levine
AARON M LEVINE & ASSOCIATES PA
1320 19th Street, NW
Suite 500
Washington, DC 20036

Nancy A. Mismash
ROBERT J DEBRY & ASSOCIATES
4252 South 700 East
Salt Lake City, UT 84107

Christopher A. Seeger
SEEGER WEISS
One William Street
10th Floor
New York, NY 10004-2502

Terry O. Tottenham
FULBRIGHT & JAWORSKI LLP
600 Congress Avenue
Suite 2400
Austin, TX 78701-2011

IN RE: FOSAMAX PRODUCTS LIABILITY LITIGATION          MDL No. 1789

## INVOLVED JUDGES LIST (CTO-56)

~~Hon. Susan Ritchie Bolton~~
~~U.S. District Judge~~
~~522 Sandra Day O'Connor U.S. Courthouse, SPC 50~~
~~401 West Washington Street~~
~~Phoenix, AZ 85003-2153~~

Hon. Richard J. Leon
U.S. District Judge
4335 E. Barrett Prettyman U.S. Courthouse
333 Constitution Avenue, N.W.
Washington, DC 20001

Hon. Dee V. Benson
U.S. District Judge
264 Frank E. Moss U.S. Courthouse
350 South Main Street
Salt Lake City, UT 84101

Hon. Bruce S. Jenkins
Senior U.S. District Judge
421 Frank E. Moss U.S. Courthouse
350 South Main Street
Salt Lake City, UT 84101

Hon. Ted Stewart
U.S. District Judge
United States District Court
148 Frank E. Moss United States Courthouse
350 South Main Street
Salt Lake City, UT 84101

UNITED STATES DISTRICT COURT
Southern District of New York
Office of the Clerk
500 Pearl Street
New York, N.Y. 10007
(212)805-0136

FILED
U.S DISTRICT COURT

2008 JUN -9 P 2: 58

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

J. Michael McMahon
Clerk
DISTRICT OF UTAH

Date:    6/6/2008

In Re:   FOSAMAX PRODUCTS

MDL      1789

Your Docket #                     S.D. OF N.Y.
   08 -340 DB                        08 CV 5206

Dear Sir:

        Enclosed is a certified copy of the order of the Judicial Panel on Multidistrict Litigation, transferring the above entitled action presently pending in your court, to the Southern District of New York and assigned to Judge KEENAN for coordinated or consolidated pretrial processing pursuant to 28 USC 1407.

        Please return the copy of this letter when transmitting YOUR FILE and a CERTIFIED COPY OF THE DOCKET SHEET.

Sincerely,
J.Michael McMahon

By: PHYLLIS ADAMIK
MDL Unit
(212) 805-0646

UNITED STATES DISTRICT COURT
Southern District of New York
Office of the Clerk
500 Pearl Street
New York, N.Y. 10007
(212)805-0136

J. Michael McMahon
Clerk
DISTRICT OF UTAH

Date:    6/6/2008

In Re:  FOSAMAX PRODUCTS

MDL    1789

Your Docket #
08 -340

S.D. OF N.Y.
08 CV 5206

Dear Sir:

Enclosed is a certified copy of the order of the Judicial Panel on Multidistrict Litigation, transferring the above entitled action presently pending in your court, to the Southern District of New York and assigned to Judge KEENAN for coordinated or consolidated pretrial processing pursuant to 28 USC 1407.

Please return the copy of this letter when transmitting YOUR FILE and a CERTIFIED COPY OF THE DOCKET SHEET.

Sincerely,
J.Michael McMahon

By: PHYLLIS ADAMIK
MDL Unit
(212) 805-0646

Inasmuch as no objection is
pending at this time, the
stay is lifted.

JUN - 2 2008

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUDGE KEENAN

08 CV 5206

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MAY 15 2008

FILED
CLERK'S OFFICE

U.S. D. COURT

JUL 0 6 2008

S. D. OF N.Y.

UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

IN RE: FOSAMAX PRODUCTS LIABILITY LITIGATION

MDL No. 1789

SDNY
6/6/08

(SEE ATTACHED SCHEDULE)

CONDITIONAL TRANSFER ORDER (CTO-56)

On August 16, 2006, the Panel transferred four civil actions to the United States District Court for the Southern District of New York for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* 444 F.Supp.2d 1347 (J.P.M.L. 2006). Since that time, 126 additional actions have been transferred to the Southern District of New York. With the consent of that court, all such actions have been assigned to the Honorable John F. Keenan.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Southern District of New York and assigned to Judge Keenan.

Pursuant to Rule 7.4 of the <u>Rules of Procedure of the Judicial Panel on Multidistrict Litigation</u>, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Southern District of New York for the reasons stated in the order of August 16, 2006, and, with the consent of that court, assigned to the Honorable John F. Keenan.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Southern District of New York. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

A CERTIFIED TRUE COPY

JUN - 2 2008

ATTEST
FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

A CERTIFIED COPY
J. MICHAEL McMAHON,        . CLERK

DEPUTY CLERK

# United States District Court
# District of Utah



**D. Mark Jones**
Clerk of Court

**Louise S. York**
Chief Deputy Clerk

June 11, 2008

Clerk of Court
U.S. District Court Office of the Clerk
Southern District of New York
Office of the Clerk
500 Pearl Street
New York, NY 10007

—

RE:    Hebert et al v. Merck & Co.
       2:08cv00340 DB
       MDL No. 1789

Dear:

Pursuant to the MDL Order of Transfer, we are forwarding certified copies of the complaint (and any amendments, if appropriate). A certified copy of the docket sheet is also enclosed.

Please acknowledge receipt of this letter by signing a copy of this letter and returning it to our office.. If you have any questions, please advise. My telephone number is 801-524-3245.

Sincerely,
D. Mark Jones, Clerk

By
Ryan Robertson

Enclosures
cc:    counsel of record
       Certified Mail Receipt No.

## ACKNOWLEDGMENT OF RECEIPT:

**Received by:** _____

**Date:** _____